THE CENTRAL RAILROAD COMPANY OF NEW JERSEY

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY.

[Decided September 11th, 1920.]

1. Where a city contracted with a railroad company that the city should construct and complete certain sewers, designed for the use of the city, through and across the lands of the company to the exterior line for piers in New York bay, and the city left the sewer uncompleted at a point four thousand five hundred and fifty feet from the outlet, the result being that an immense cesspool was formed on the lands of the complainant, thereby creating a continuing nuisance, on bill filed by the company for an injunction and other relief, a decree for specific performance will be granted, as the public health is involved in a high degree and an injunction against the use of the sewer might prove detrimental to the public health.

2. The contention on the part of the city that it was without power to make the contract sued on, and that therefore no right can accrue to the company under it, is without merit, as the company does not seek to be relieved from any assessment for benefits, or to enforce any benefit arising from the contract, except to be relieved from the existing nuisance.

3. Against such a continuing nuisance, it is apparent that the complainant can have no complete and adequate remedy at law, and the parties are forced into equity for ultimate relief.

On bill and answer with exhibits.

*Mr. Edwin F. Smith, Mr. Charles E. Miller* and *Mr. George Holmes,* for the complainant.

*Mr. Charles M. Egan,* for the defendant.

LEWIS, V. C.

The bill is filed in this case, *inter alia,* to compel the city of Jersey City to carry out a contract admittedly made between the city and the Central Railroad Company of New Jersey, the complainant herein, to construct and complete certain sewers designed for the use of the city, through and across the lands of the complainant, located at what is known as Communipaw, in the city of Jersey City, to the exterior line for piers in New York bay, as established by the riparian commissioners of the State of New Jersey, in accordance with the specific terms of the contract mentioned; and to restrain the city (which has left the outlet sewer uncompleted at a point about four thousand five hundred and fifty feet from the terminus designated) from perpetrating and maintaining the continuing nuisance which results from the emptying of the sewage on to the lands of the complainant where the point of outlet now exists, thus forming what is, in fact, an immense cesspool on the lands of the complainant, to the alleged detriment of the health of a large number of people, and to the manifest interference of the complainant with the use of its property as contemplated in the contract referred to.

The facts are not disputed, and the legal issues involved are raised by the pleadings and certain exhibits which have been submitted to the court upon the arguments.

The significant portions of the contract are in substance as follows:

"Whereas, the city and its authorities desire and require for public uses, the use of certain lands of the railroad company for the purposes of

a right of way in which to construct two trunk line sewers　\*　\*　\*
[reciting the purposes and directions of said sewers]　\*　\*　\*; and in
order that there shall be a proper outlet for the said sewers into New
York bay, the city and its authorities desire to construct said sewers
across the right of way, railroad and tracks, yard and other lands of the
railroad company to the exterior line for piers on said bay;　\*　\*　\*

"Whereas, the railroad company now have a large number of railroad
tracks upon their said lands and also have in course of construction many
other railroad tracks and contemplate in the near future a construction
of other railroad tracks thereupon so that all of their said lands, as
shown upon the said map hereto attached, may be ultimately said covered
with railroad tracks and their appliances and other structures, yet the
said railroad company is willing to demise the use of so much of their
said lands and rights of way as shall be necessary for the construction
and maintenance of said sewers for public uses to the exterior lines for
piers on New York bay, as now fixed or hereafter fixed by the riparian
commissioners of the State of New Jersey, or by such other authorities
having jurisdiction of the same, without the payment of any money com-
pensation on the part of the city; and in lieu of money compensation the
railroad company desires to obtain from the city certain privileges, rights,
authorities and grants as are hereinafter set forth as the consideration
moving the railroad company to give and demise the use of the said right
of way hereinbefore mentioned; provided, always, that the said sewer is
so constructed and protected that the surface of the ground over the
same may be freely and uninterruptedly used at all times for the con-
struction, maintenance and operation of the company's railroad tracks,
their appliances, and such other structures as it may desire to erect, as
well as the free and uninterrupted use of the surface or otherwise of the
said right of way by the said company for the transaction of its busi-
ness and such other purposes as the said company may desire.

"Therefore, it is agreed:

### *"By Railroad Company—*

"(*a*) Grants and conveys to the city a right of way twenty-five feet in
width in which to construct and maintain sewers mentioned, through and
across the lands and rights of way of the company, from the westerly side
thereof to the exterior line for piers on New York bay;

"(*b*) Without costs, to convey to city the use of all lands necessary
for the relocation of any of the streets herein required to be relocated, and
do all the work of reconstructing the relocated portions thereof, without
charge or expense to the city;

"(*c*) To construct, at its own cost, a brick sewer of certain dimen-
sions, from the easterly end of Philip street," &c.

### *By City—*

"(*a*) Agrees to construct on said right of way the sewers as provided
in said agreement;

"(*b*) To keep the work of building said sewers in advance of the work
of filling and reclaiming said lands as will in anywise hinder or delay the
work of filling and reclamation, and at all times permit the free, clear

and sanitary venting of said sewers into the waters of New York bay and so that the same shall not be in anywise a nuisance, and indemnify and save harmless the company from all claims, fines, damages, &c., by reason of said venting of said sewers into the waters of New York bay or by reason of the same being a nuisance, public or otherwise;

"(c) Agrees that the lands so conveyed to it are worth $75,000, and in consideration of the conveyance of such land to it without any money consideration, no assessment for benefits shall be made against the company, for the cost, or otherwise, of the sewer;

"(d) Gives the company the right to make connections with the sewer free of charge;

"(e) Gives company right to construct lateral sewers in certain streets to drain water from the cut of the Newark and New York Railroad Company;

"(f) Agrees to change the grade and vacate a portion of Communipaw avenue and relocate a portion thereof and construct a new bridge;

"(g) Agrees to pass the necessary ordinances, resolutions, &c., railroad company to pay costs;

"(h) Agrees to change the grade of Gates avenue and that company to construct new bridge over its lines at said avenue and to pass the necessary resolutions, &c.;

"(i) Agrees to vacate a portion of Philip street and relocate the same, and grant the company the right of way to lay tracks across a portion thereof, and to pass the necessary resolutions, &c.;

"(j) Grants to company the right to open Philip street for the purpose of constructing a sewer, and will pass the necessary resolutions, ordinances, &c.;

"(k) Will compel all house drains to connect with said sewer and will keep the sewer in repair;

"(l) Grants to company the right to connect said sewer free of charge."

The issues raised by the answer filed by the defendant are as follows:

"(a) That it had no authority to relieve complainant from the payment of assessments for the benefits arising from the cost of the construction of the sewer.

"(b) That it had no authority to permit the complainant, without costs, to make connections with said sewers from such lateral sewers as complainant might construct.

"(c) Exemption from assessment and costs of such sewers was illegal, and the agreement was *ultra vires.*

"(d) It had no power or legislative sanction to vacate and relocate a part of Philip street.

"(e) It had no power or legislative sanction to enter into the agreement, and the same is *ultra vires.*

"(f) The court has no jurisdiction."

The complainant company has performed its part of the contract in full.

The defendant, city, has performed its part of the contract in all things except the completing of the outlet sewer to the point fixed in the exterior line for piers. It refuses to continue on with the construction of the sewer to completion, but persists in using the sewer, and thus dumping its sewage on the lands of the complainant in the manner already indicated.

In spite of the fact that the complainant, in carrying out its part of the contract has practically vested in the defendant property to the value of between $75,000 and $100,000, the city, in seeking to avoid the full performance of its part of the contract contends, chiefly, that it was without power to make the contract, and that, therefore, no rights can accrue to the railroad company, enforceable in this court, by virtue of a contract which they claim to be *ultra vires.*

It is sufficient to say, in this respect, that the complainant does not seek in its bill to be relieved from any assessment or other charge arising from the improvement involved; or to enforce in its favor any benefit which it might claim in these respects under the contract except as hereinabove set forth. The complainant apparently leaves the ultimate disposition of those phases of the contract to subsequent adjustment or determination as occasion may arise.

The sole issue to be disposed of at this time seems to resolve itself into the matter of the completion of the sewer, and the restraining of the existing nuisance, the offensive character of which cannot be questioned.

From the very nature of the situation which is presented it seems clear that complainant can have no complete and adequate remedy at law. It is entitled to the free and untrammeled use of its property, and the city has no right to invade the complainant's property under the guise of a solemn contract, and then use it for its own offensive purposes; leaving the complainant to seek redress for such unwarranted action through the medium of damages in a court of law.

The city had the undoubted power to construct the sewer; and it had the undoubted power to acquire lands, or an easement in

lands for such purpose, either by purchase or by condemnation. It has, by its contract, induced the railroad company to part with valuable property rights, and to incur large expenditures in improvements, in good faith, under the contract, on its part; and the city's failure to carry out its part of the contract is, to my mind, on the case as presented, unjustifiable.

Again, in the very nature of the situation, the nuisance which has been thus created, is a continuing one, and there could be no end to the successive suits at law if the complainant was left to its remedy in damages, if any; and, eventually, the parties would be forced into equity for ultimate relief.

I think that the complainant is entitled to relief from the nuisance that is shown to exist; and that the proper way to grant it is to decree a specific performance of the contract made by the city to construct its sewers to the outlet at the exterior line for piers in New York bay.

The only other alternative would be to enjoin the city from using the sewers to dispose of the accumulating sewage and to remove its pipes from the lands of the complainant, upon the theory of a complete breach of the contract on the part of the city.

The public interest in this situation is so great, however, and the public health is involved to such a high degree that I am convinced that the effective method of accomplishing the result, to which the complainant is clearly entitled, will be to enforce the completion of the sewer as designed.

I will, therefore, advise a decree accordingly.

The terms of the decree will be settled upon application.